### In re Jay Alden NOWELL, Debtor.

### Bankruptcy No. 98–60808.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

March 9, 1999.

Jeffrey W. Farkas, Columbus, OH, for Debtor.

Jay F. McKirahan, Deanna L. Stockamp, Whann & Associates, Dublin, OH, for Columbus Auto Resale.

Frank M. Pees, Worthington, OH, Chapter 13 Trustee.

### OPINION AND ORDER ON DEBTOR'S MOTION TO SHOW CAUSE (COLUMBUS AUTO RESALE)

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on a motion by the debtor seeking to have Columbus Auto Resale ("CAR") held in contempt for violating §§ 362(a)(3), (5) and (6) of the Bankruptcy Code. CAR filed a response and the Court heard the matter on February 16, 1999.

The Court has jurisdiction in this contested matter under 28 U.S.C. § 1334 and the General Order of Reference previously entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(*O*).

From the testimony and other evidence admitted at the hearing, the Court finds the following facts.

The debtor purchased a 1991 Ford from CAR in 1997. CAR financed that purchase and had a lien noted on the vehicle title. At some point the debtor defaulted in his payments to CAR and, on October 13, 1998, CAR repossessed the Ford. On November 5, 1998, the debtor called CAR

to inquire if the vehicle was still on CAR's lot. CAR's representative told the debtor the 1991 Ford was still on the lot and that CAR would extend the time for the debtor to redeem the vehicle. On the following day, Friday, November 6, 1998, the debtor filed his chapter 13 case and proposed a plan which required CAR to return the vehicle to the debtor. The remaining debt to CAR, including costs incurred because of the repossession, storage and towing of the vehicle, would be paid by the chapter 13 trustee through the plan.

On the Monday after the debtor's Friday bankruptcy filing, an employee of the debtor's attorney contacted CAR by telephone and faxed a copy of the debtor's bankruptcy petition. When she spoke with CAR's representative by telephone, she was told that CAR believed it did not have to return the vehicle until the time of the meeting of creditors. On a later day she provided CAR with proof of the debtor's insurance on the vehicle. At that time CAR informed debtor's attorney's employee that the car had been sold on November 2 to an unrelated buyer. On November 12 the title to the vehicle was transferred from the debtor to CAR and then on November 13 it was transferred to CAR Inc. On November 16, 1998, the title was transferred to the buyer.

CAR's representative testified that once the bankruptcy court notifies it of a bankruptcy filing, it does not sell a repossessed vehicle. In this instance CAR believed there was an enforceable contract between it and a good faith purchaser prior to the bankruptcy filing. The terms of that contract were $500 in cash and $500 by check. CAR waited for that check to clear and then initiated the title change process. That process crossed with the bankruptcy filing of which CAR received actual notice. The actual transfer of title was postpetition. At the time of the bankruptcy filing, the title to the vehicle remained in the debtor's name. CAR did not send written notice to the debtor of his right to redeem.

The issue before the Court is not a request by the debtor for the buyer or CAR to turn over the vehicle to the debtor. The issue is whether CAR's continuation of the process of transferring the title and completion of the sale was a willful violation of 11 U.S.C. §§ 362(a)(3), (5), or (6). Subsections (a)(5) and (a)(6) of section 362(a) provide for an automatic stay, upon the filing of a bankruptcy case of:

> (a)(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (a)(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

The Court finds that CAR's actions in continuing to conclude the prepetition sale of debtor's vehicle are not actions prohibited by the express language of §§ 362(a)(5) or (a)(6). Therefore, the only part of § 362(a) which requires further analysis in light of CAR's actions is § 362(a)(3).

Subsection (a)(3) of § 362(a) provides for an automatic stay, upon the filing of a bankruptcy case, of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." CAR's actions clearly were an effort to obtain (and maintain) possession of the vehicle or to remove the vehicle from the debtor's name and to continue to exercise control over the disposition of that vehicle. Further, CAR had actual knowledge of the bankruptcy filing prior to all of its actions except for the execution of the purchase agreement with the buyer of the vehicle. Therefore, if CAR's actions violate § 362(a)(3), such actions were taken willingly after actual notice of the case and the damages provision of § 362(h) will be available to the debtor.

All of this, however, turns on whether these actions related to property of the bankruptcy estate. That determination

depends upon what rights the debtor retained in the vehicle, if any, after it had been repossessed and the secured creditor had executed an enforceable contract of sale to a good faith purchaser.

Case law in this circuit establishes that a debtor's right to redeem a vehicle repossessed by a secured creditor continues until the vehicle is sold. *National City Bank v. Elliott (In re Elliott)*, 214 B.R. 148 (6th Cir. BAP 1997), citing Ohio Rev.Code § 1309.49. Under Ohio law, an enforceable contract of sale also terminates a debtor's right to redeem. Ohio Rev.Code § 1309.49. The enforceable contract in this case occurred before the bankruptcy filing and, therefore, the debtor had no right to redeem the vehicle through his chapter 13 plan.

This finding that the contract of sale executed on November 2, 1998 between CAR and the third party buyer terminated the debtor's right to redeem the car does not mean that the debtor lacked any interest in the car at the time of his bankruptcy filing. The vehicle was still titled to the debtor. Under 11 U.S.C. § 541(a)(1), therefore, that title interest, however limited it may be because of the termination of the debtor's right to redeem, is still a legal interest which is property of the bankruptcy estate. CAR was not free to exercise any control over that legal interest without first obtaining relief from the automatic stay.

Based upon the foregoing, the Court finds that CAR violated the automatic stay by taking affirmative actions to complete a transfer of the title to the vehicle from the debtor to CAR, then to CAR Inc. and finally to the buyer. Further, such violation took place with actual knowledge of the bankruptcy filing.

Pursuant to this finding and under 11 U.S.C. § 362(h), the debtor is entitled to recovery of actual damages, including costs and attorney's fees. Under the unusual facts of this case, however, the Court does not believe that punitive damages would be appropriate. Moreover, this finding is not intended to resolve any issues about whether CAR acted properly under the Uniform Commercial Code with respect to its repossession and sale of this vehicle. That matter was not properly before the Court at the hearing.

The debtor and his attorney are hereby given twenty (20) days to file an application for attorney fees and any other demonstrable damages. Such application shall be served on the attorney for CAR and on the chapter 13 trustee. If there is no objection to the application, a proposed order should be presented within seven (7) days after expiration of the response period date as required by LBR 9072–1(e). The debtor is also given twenty (20) days to amend his proposed chapter 13 plan to take into account the content of this order.

**IT IS SO ORDERED.**